REQUESTED BY: Senator Rex Haberman Senator John DeCamp Senator Chris Beutler Nebraska State Legislature Room 1114, State Capitol Lincoln, NE 68509
Dear Senators:
You have jointly requested our opinion on Sections 59 and 60 of LB 1, Eighty-Seventh Legislature, Second Special Session 1982. You refer to our Opinions No. 91 and 101, Report of the Attorney General 1983-84, dealing with matters involving the transfer of monies from particular funds to either the General Fund or particular funds. By way of background, in Opinion No. 91, we stated that Neb.Rev.Stat. § 8-1120 (Reissue 1977) and Article III, Section 12 of the Constitution, prohibited the Legislature from transferring in an appropriations bill money in the Social Security Contribution Fund to the General Fund. We further indicated in that opinion that Neb.Rev.Stat. § 68-613 (Reissue 1981) authorized the transfer to the General Fund of interest income from the Social Security Contribution Fund. In Opinion No. 101 the question was whether LB 469, as amended by Amendment No. 1298, cured any constitutional problems relating to the transfer of monies from the particular funds to the general or other fund. We responded that it did cure such problems.
You now ask the following four questions:
 1. It would appear that from your opinions #91 and #101 that many of the transfers listed above were made in an unconstitutional manner. Which of these transfers, in your opinion, are in fact constitutionally suspect?
 2. LB 1 provided that the above transfers were to take place on or before June 1, 1983. If any of these transfers are suspect and have already occurred, must the money transferred be returned to the originating fund?
 3. Who is the proper party to see that any illegally transferred funds are properly returned to their originating fund, and who may compel this party to take this action?
 4. On any funds that were transferred illegally, upon their return to their originating source, is there any requirement that interest be paid on such funds for the period of time they were held in the General Fund, or Nebraska Capital Construction Fund, and how is that interest to be computed?
We should point out of the $8,955,000 directed to be transferred in LB 1, Section 59 and 60, to the Nebraska Capital Construction Fund and to the General Fund, all but $300,000 has been transferred. We will answer your questions in the order they were asked.
Each of the transfers directed to be made in Sections 59 and 60 are constitutionally suspect. See, Opinions No. 91 and 101.
The Legislature in directory language in LB 1, required the State Treasurer to transfer this money. The State Treasurer transferred the money pursuant to this directive. The Treasurer could not now reverse those transfers since there is neither statutory authority nor legislative direction to do so.
A proper party could commence a lawsuit to restore the monies transferred and we feel that the court would order restoration of unspent monies; we are unable to predict what the court would do about the portion of the transferred monies that has been spent. We have found no statute that imposes a duty on any state officer to act in this circumstance nor any that grant authority to do so. The question of the legality of the funds was not raised at the time the transfers were made nor was it a matter considered when the Legislature adopted LB 1. While a legislative act is void from its inception if it is unconstitutional, we are faced here with a fait accompli. That is, the Legislature ordered that a particular action be taken. The administrative officers responsible took the action as ordered by the Legislature.
While the Legislature did not have the authority to transfer the monies in the manner followed in LB 1, nonetheless, the administrative officers were neither on notice nor should they have had any reason to know of the impropriety of the legislative action. Hence, they did as directed by the Legislature. We are now ten-twelfths through the fiscal year concerned, the money which was transferred has presumably been used in the manner directed by the Legislature for state activities. If this transfer is to be corrected, it is a matter for the Legislature to address and not any executive officer.
The Legislature appears ready to respond to these problems by the adoption of LB 469 in the current legislative session. As we indicated in Opinion No. 101, `However, it is also clear that the authority provided in LB 469 may be exercised in a subsequent appropriation bill in this legislative session and, thus, any perceived difficulty with the purported action in LB 602, Section 27 is curable by subsequent legislative action this session.' We believe that the same reasoning holds true in this case. That is, that the Legislature is now aware of the problem presented by the transfers ordered in LB 1 of the special session. The Legislature is well aware of those problems as they relate to the transfers of money from specified funds to other funds in the current session. The Legislature has plenary power over the funds of the state for most purposes. Thus, any problem which exists is to be addressed by the Legislature and not by the executive officers.
These same comments are applicable to your questions with respect to the crediting of interest.
Very truly yours, PAUL L. DOUGLAS Attorney General Patrick T. O'Brien Assistant Attorney General